UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL, | No. 2:19-cv-0578 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| M. LIDDELL, et al., | |
| Defendants. | |

Introduction

    Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 40.) Alternatively, defendants request an evidentiary hearing as to any disputed factual issues. (Id.) For the reasons stated herein, the undersigned orders an evidentiary hearing.

Legal Standard for Summary Judgment

    Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

////

1

1     Under summary judgment practice, the moving party always bears the initial
2 responsibility of informing the district court of the basis for its motion, and identifying those
3 portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,
4 together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue
5 of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.
6 R. Civ. P. 56(c)).
7     "Where the nonmoving party bears the burden of proof at trial, the moving party need
8 only prove that there is an absence of evidence to support the non-moving party's case." Nursing
9 Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,
10 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory
11 committee's notes to 2010 amendments (recognizing that "a party who does not have the trial
12 burden of production may rely on a showing that a party who does have the trial burden cannot
13 produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment
14 should be entered, after adequate time for discovery and upon motion, against a party who fails to
15 make a showing sufficient to establish the existence of an element essential to that party's case,
16 and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.
17 "[A] complete failure of proof concerning an essential element of the nonmoving party's case
18 necessarily renders all other facts immaterial." Id. at 323.
19     Consequently, if the moving party meets its initial responsibility, the burden then shifts to
20 the opposing party to establish that a genuine issue as to any material fact actually exists. See
21 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
22 establish the existence of such a factual dispute, the opposing party may not rely upon the
23 allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
24 form of affidavits, and/or admissible discovery material in support of its contention that such a
25 dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party
26 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
27 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
28 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on May 19, 2020, (ECF No. 40-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

Legal Standard re:  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6; Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

4

Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31.

////

---

[1] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d 1162.

Plaintiff's Claims

In his verified complaint, plaintiff alleges that defendants Liddell, Anderson and Cross retaliated against plaintiff because he filed a civil rights complaint and a staff complaint at the prison level. Plaintiff alleges that such defendants retaliated against plaintiff by confiscating his typewriter.

Discussion

*Plaintiff's Evidence re: Administrative Grievances*

In his verified complaint, plaintiff states the following. On March 29, 2019, around 1:00 p.m., plaintiff requested to speak to defendant Lindell. When Lidell arrived, plaintiff informed Lidell that plaintiff was challenging the punitive cell search as harassment and retaliation, and the illegal taking of plaintiff's typewriter. Plaintiff then handed defendant Lidell plaintiff's 602 appeals complaint form, "Staff Complaint," and instructed Lidell to turn it into inmate appeals for proper filing. (ECF No. 1 at 2, 9.) Defendant Lidell gave the grievance to defendant Cross, who came to plaintiff's cell around 1:30 p.m. accompanied by defendants Anderson and Liddell. Defendant Cross accused plaintiff of being a negative human being, and stated plaintiff was a

6

1 little punk bitch, with no fucken backbone. (ECF No. 1 at 9.) Plaintiff replied, "You're very
2 unprofessional, unlady like." (Id.) Defendant Cross then verbally threatened plaintiff's safety by
3 stating, "you come back out of that cell again, and I'll do more than take away your fucken
4 typewriter." (Id.) Plaintiff attempted to de-escalate the situation by apologizing, but defendant
5 Cross produced plaintiff's 602 appeal complaint form and ripped the grievance form up into
6 small pieces, "directly in plaintiff's face and in front of plaintiff's peers," then telling plaintiff to
7 "consider his complaint filed and his issues to be addressed, and corrected." (ECF No. 1 at 2, 6,
8 10.) This is the second time in two weeks that defendant Cross ripped up plaintiff's 602
9 grievance form. (ECF No. 1 at 12.) Plaintiff contends such act rendered his administrative
10 remedies unavailable.

11 With his opposition, plaintiff provides his own declaration reiterating his claim that
12 instead of submitting the appeal form to the appeals box, Liddell gave plaintiff's grievance form
13 to defendant Cross. At about 1:30 p.m., defendants Cross, Anderson and Liddell approached
14 plaintiff's cell. Defendant Cross was holding plaintiff's 602 grievance that plaintiff had asked
15 Liddell to place in the appeals box. Defendant Cross, "highly agitated," told plaintiff "you come
16 back out of that cell again, and I'll do more than take away your fucken typewriter." (ECF No.
17 46 at 19.) Cross then produced plaintiff's 602 grievance and "ripped the complaint form into
18 small pieces," and then stated "consider this filed. I addressed, and corrected your problem all in
19 one visit." (Id.) Further, plaintiff states that defendant Cross' verbal threat "effectively
20 intimidated" plaintiff not to exit his cell until he was later transferred safely to CSP-Corcoran.
21 (ECF No. 46 at 20.)

22 Plaintiff provided two inmate declarations:
23 1. In addition to witnessing events prior to and during the confiscation of plaintiff's
24 typewriter, inmate Moises Vega, AX-5503 declared that Vega (a) heard plaintiff speaking to
25 Liddell; (b) heard plaintiff explain to Liddell that plaintiff had a request form for Liddell to sign
26 and plaintiff needed a cell search receipt; (c) saw Liddell sign plaintiff's request form, and then
27 saw Liddell walk away; (d) saw Liddell return 15-20 minutes later, hand plaintiff some papers,
28 then saw plaintiff hand Liddell a 602 appeal form; (e) heard plaintiff state, "turn this in to the

7

1 inmate appeals office;" (f) saw defendants Anderson, Liddell and Cross return to the front of
2 plaintiff's cell later that day; Cross was yelling at plaintiff, calling him names, and stated:
3 "Howell, you're a little punk bitch.  You don't got a fucken backbone;" (g) heard Cross tell
4 plaintiff that if he came back out of his cell again, she'll do more than take away his typewriter;
5 (h) saw Cross with the 602 green appeal form in her right hand; (i) saw Cross ripping the
6 complaint form up; (j) heard Cross telling plaintiff consider the appeal filed, and that she
7 addressed and corrected his problems all in one visit.  (ECF No. 46 at 26.)

8     2. Inmate Mark A. Hunt, F-60076, declared that he (a) saw Cross go to plaintiff's cell,
9 "they was yelling;" (b) heard Cross say:  "Howell you're a little bitch, you don't got no fucken
10 backbone," and "consider your appeal filed an addressed;" (c) heard paper being ripped-up; and
11 (d) heard Cross tell plaintiff that if he come out of his cell again she will do more than take his
12 typewriter away.  (ECF No. 46 at 28.)

13     Plaintiff also provided a copy of his CDCR 22 Request for Interview form dated March
14 29, 2019.  Plaintiff complained that Liddell took plaintiff's typewriter without leaving a cell
15 search notice or receipt, and that the CDCR 22 would serve as plaintiff's receipt.  (ECF No. 46 at
16 23.)  Plaintiff wrote that he was giving Lidell plaintiff's 602 complaint form to be submitted, but
17 wanted it noted that Capt. R. Cross ripped up plaintiff's last complaint form, so signed this CDCR
18 22 form to document plaintiff was giving Liddell plaintiff's complaint form.  The CDCR22 form
19 is signed by Liddell on March 29, 2019.  (ECF No. 46 at 23.)  The staff response section is blank,
20 but on March 30, 2019, plaintiff completed Section C:  Request for Supervisor Review, writing:
21 "I am requesting to speak directly to the warden.  Capt. R. Cross just threat[ened] me and she
22 ripped up my 602 complaint form for the 2nd time denying me access to the appeal system and to
23 file a complaint on her. . . ."  (ECF No. 46 at 23.)

24     *Discussion*

25     The parties do not dispute that plaintiff did not pursue a grievance regarding the alleged
26 retaliation to the third level of review.  Moreover, there is no record of a grievance pertaining to
27 the instant retaliation claims having been accepted at the first level of review.  Instead,
28 defendants' summary judgment motion is accompanied by defendants' declarations disputing

8

plaintiff's version of the events of March 29, 2019, and they argue that despite plaintiff's claim that defendant Cross tore up plaintiff's 602 grievance in front of him, which she denies, it is undisputed that plaintiff had several alternative means by which to file another inmate appeal and start the administrative process:  plaintiff could have (1) given it to another staff member at CSP-Sacramento; (2) dropped it into the appeals box in his housing unit; (3) waited until his return to CSP-Corcoran to submit the appeal from there.  (ECF No. 40-2 at 7.)  The undersigned addresses these arguments in turn.

Defendants contend that "administrative remedies are unavailable only when they are 'not capable of use to obtain relief . . . [not] simply because circumstances make the process difficult or unpleasant. . . .'"  (ECF No. 40-2 at 7, quoting Ross, 136 S. Ct. at 1858.)  As an example, defendants cite Millner v. Biter, 2017 WL 735588, at * 4 (E.D. Cal. Feb. 24, 2017).  However, in Millner, it was the prisoner's own mental or physical condition that he claimed rendered administrative remedies unavailable.  Id. ("While [Millner's] pain and/or mental distress may have made the grievance process more challenging, it was not out of reach to [Millner] so as to be rendered 'unavailable' through no fault of his own.")  Here, it was the alleged actions of defendant Cross who allegedly verbally intimidated plaintiff and tore up the grievance that stood in the way of plaintiff filing his initial grievance.

Also, in addition to the "not capable of use" element, the Supreme Court explained that exhaustion is also not required

> when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . .  And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable.[fn3] And then, once again, § 1997e(a) poses no bar.
>
> [FN3:  See, e.g., Davis v. Hernandez, 798 F.3d 290, 295 (C.A.5 2015) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted)); Schultz v. Pugh, 728 F.3d 619, 620 (C.A. 7 2013) ("A remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy"); Pavey v.

|   |   |
|---|---|
| 1 | Conley, 663 F.3d 899, 906 (C.A.7 2011) ("[I]f prison officials misled [a prisoner] into thinking that . . . he had done all he needed to initiate the grievance process," then "[a]n administrative remedy is not 'available'"); Tuckel v. Grover, 660 F.3d 1249, 1252-1253 (C.A.10 2011) ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available'"); Goebert v. Lee County, 510 F.3d 1312, 1323 (C.A.11 2007) (If a prison "play[s] hide-and-seek with administrative remedies," then they are not "available").] |

Ross, 136 S. Ct. at 1860, & n.3; See Sapp, 623 F.3d at 822 (Where a prisoner has been refused 602 forms or where the forms he attempted to submit were destroyed by prison official, exhaustion may be excused.). Thus, whether or not defendant Cross tore up plaintiff's grievance and verbally intimidated plaintiff from attempting to file another grievance at CSP-Sacramento are material disputes of fact that require addressing through an evidentiary hearing.

Moreover, in Williams v. Paramo, 775 F.3d 1182 (9th Cir. 2015), the plaintiff argued that prison officials refused to process her administrative grievances. The defendants argued that "remedies were available to [plaintiff] as evidenced by the multiple unrelated appeals that she was able to file successfully." 775 F.3d at 1192. The Ninth Circuit rejected such argument:

> This argument is a virtual non-sequitur because it does nothing to rebut Williams's evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case. Other circuits have similarly concluded that defendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him. In Hemphill v. New York, for example, the Second Circuit held that merely showing that grievance mechanisms are in place does not end the inquiry into availability where the plaintiff claims that threats by prison officials made the remedy functionally unavailable to him. 380 F.3d 680, 687-88 (2d Cir. 2004); see also Dillon v. Rogers, 596 F.3d 260, 268-69 (5th Cir. 2010) (holding that records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff). Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear. Albino, 747 F.3d at 1172.

Id. Whether or not it is undisputed that plaintiff had other opportunities to file a second grievance on his retaliation claims herein, the undersigned finds such facts are not material to whether any defendant thwarted plaintiff's ability to file his first grievance. "Plaintiff should not have to make

10

repeated attempts to both obtain and submit 602 forms to be deemed to have satisfied the exhaustion requirement." Garcia v. Folks, 2019 WL 1452904, at *9 (E.D. Cal. Apr. 2, 2019), adopted, 2019 WL 4954937 (E.D. Cal. Oct. 8, 2019), citing see Cato v. Darst, 2016 WL 1734759, at *7 (E.D. Cal. May 2, 2016) (prisoner not obligated to continue trying to exhaust administrative remedies after prison officials thwart his attempts to do so).

Defendants also argue that following his transfer from CSP-Sacramento to CSP-Corcoran, plaintiff still had two weeks in which he could have submitted a grievance regarding the alleged retaliation because plaintiff still had administrative remedies available to him after such transfer.

The undersigned is not persuaded by defendants' argument that a prisoner is obligated to continue exhausting administrative remedies after prison officials allegedly thwart his attempts at administrative exhaustion. As discussed by the Central District of California, unavailable remedies can excuse exhaustion because:

> The PLRA "does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010). An administrative remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to properly filed grievances or if they otherwise use affirmative misconduct to thwart an inmate's attempts to exhaust. See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Brown v. Valoff, 422 F.3d at 943 n.18 (9th Cir. 2005).

Ekene v. Cash, 2013 WL 2468387, *4 (C.D. Cal. 2013).

If defendant Cross tore up plaintiff's grievance, as plaintiff alleges, or otherwise thwarted his attempts to pursue his grievance, then he was not required to file additional grievances following his transfer to CSP-Corcoran. Defendants are not entitled to summary judgment on this ground because the facts surrounding plaintiff's alleged attempt to exhaust administrative remedies are disputed.

Finally, in McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015), the Ninth Circuit held that a threat of retaliatory action by a prison official would render a prison grievance system unavailable so as to excuse a prisoner's failure to exhaust administrative remedies if the following conditions are met:

////

> 1. The threat of retaliation actually did deter the plaintiff from lodging a grievance or pursuing a particular part of the process; and
>
> 2. The threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id.[2] Defendant Cross' alleged threat that she would "do more than take away his typewriter" if plaintiff "came back out of his cell again," in the context of holding up plaintiff's grievance and then tearing it up, could have deterred a reasonable inmate of ordinary firmness and fortitude from filing another grievance raising his instant retaliation claims. Defendant Cross' alleged verbal threat could have led a reasonable inmate to believe that he would face further retaliation if he filed another grievance regarding the March 29, 2019 incident. However, an evidentiary hearing is required to resolve the above factual disputes, as well as make a final determination regarding the merits of plaintiff's claims regarding the alleged threats.

Based on the Ninth Circuit's reasoning set forth above, the undersigned finds that the court must resolve whether: plaintiff handed his grievance to defendant Liddell; defendant Liddell gave the grievance to defendant Cross; defendant Cross then approached plaintiff's cell, verbally intimidated him, and then tore up plaintiff's grievance at that time; defendant Cross verbally threatened to retaliate; such verbal threat deterred plaintiff from filing another grievance, and the verbal threat would have deterred a reasonable inmate of ordinary firmness and fortitude from filing another grievance. Such disputes of fact are material as to whether such actions, if they occurred, rendered administrative remedies unavailable to plaintiff. Accordingly, an

---

[2] The Ninth Circuit explained its rationale: "Requiring inmates to first exhaust through the prison's own process gives inmates an incentive to use the available remedies, i.e., to "pursue administrative proceedings that they might otherwise prefer to skip." Sapp, 623 F.3d at 823 (citing Ngo, 548 U.S. at 90, 126 S. Ct. 2378). At the same time, we must discourage prisons from actions that might deter prisoners from using grievance procedures. We therefore allow prison inmates to bring these claims in federal court when prison officials have rendered the grievance process effectively unavailable. This provides an important incentive for the prison: to allow prisoners to file grievances freely, and without fear of retaliation. See Turner [v. Burnside], 541 F.3d [1077,] at 1085 [11th Cir. 2008)] ("[Recognizing that threats can render administrative remedies unavailable] is beneficial because it reduces any incentive that prison officials otherwise might have to use threats to prevent inmates from exhausting their administrative remedies, and it thereby safeguards the benefits of the administrative review process for everyone.").

evidentiary hearing to address these issues is appropriate.  See Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (court shall hold evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (ECF No. 40) is vacated, but will be reinstated following the evidentiary hearing;

2. An evidentiary hearing is required to determine material disputes of fact as to the exhaustion of administrative remedies; and

3. The evidentiary hearing will be set by separate order.

Dated:  February 3, 2021

/howe0578.evid.hrg.msj

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE