1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREEM J. HOWELL,                    No.  2:19-cv-0578 TLN KJN P

12              Plaintiff,

13        v.                              ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
14   M. LIDDELL, et al.,

15              Defendants.

16

17        Plaintiff, a state prisoner, proceeds pro se with a civil rights action pursuant to 42 U.S.C.

18   § 1983.  On October 4, 2021, the undersigned held an evidentiary hearing on factual disputes

19   material to resolve defendants' motion for summary judgment on the grounds that plaintiff failed

20   to exhaust administrative remedies.  See Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014)

21   (court shall hold evidentiary hearing to decide disputed factual questions relevant to

22   administrative exhaustion).  Plaintiff appeared pro se; defendants were represented by Deputy

23   Attorney General Tracy S. Hendrickson.  As discussed below, the undersigned recommends that

24   defendants' motion for summary judgment be granted.

25   I. Plaintiff's Claims

26        In his verified complaint, plaintiff alleges that defendants Liddell, Anderson and Cross

27   retaliated against plaintiff by confiscating his typewriter because he filed a civil rights complaint

28   and a staff complaint at the prison level.

1

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

255.  All reasonable inferences that may be drawn from the facts placed before the court must be

drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

genuine issue, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

1    By notice provided on May 19, 2020, (ECF No. 40-1), plaintiff was advised of the

2    requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

3    Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

4    Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5    III.  Legal Standard re:  Exhaustion of Administrative Remedies

6    The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

7    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

8    prisoner confined in any jail, prison, or other correctional facility until such administrative

9    remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

10   requirement applies to all inmate suits about prison life, whether they involve general

11   circumstances or particular episodes, and whether they allege excessive force or some other

12   wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

13   Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

14   741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

15   critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

16   also cautioned against reading futility or other exceptions into the statutory exhaustion

17   requirement.  See Booth, 532 U.S. at 741 n.6; Ross v. Blake, 578 U.S. 632, 639-40 (2016).

18   Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion

19   requirement by filing an untimely or otherwise procedurally defective administrative grievance or

20   appeal.  See Woodford, 548 U.S. at 90-93.  "[T]o properly exhaust administrative remedies

21   prisoners 'must complete the administrative review process in accordance with the applicable

22   procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process

23   itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also

24   Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's

25   requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

26   In California, prisoners may appeal "any policy, decision, action, condition, or omission

27   by the department or its staff that the inmate or parolee can demonstrate as having a material

28   adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  At

4

the time of the incidents at issue here, inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  An inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock, 549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) ("Albino II").  A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino II, 747 F.3d at 1172.  Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable.  See Albino I, 697 F.3d at 1030-31.

////

---

[1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012) ("Albino I").  The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.  Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process.  Id. at 1032.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him.  See Albino II, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino II, 747 F.3d 1162.

IV.  Plaintiff's Evidence re:  Administrative Grievances

In his verified complaint, plaintiff states the following.  On March 29, 2019, around 1:00 p.m., plaintiff requested to speak to defendant Liddell.  When Liddell arrived, plaintiff informed Liddell that plaintiff was challenging the punitive cell search as harassment and retaliation, and the illegal taking of plaintiff's typewriter.  Plaintiff then handed defendant Liddell plaintiff's 602 appeals complaint form, "Staff Complaint," and instructed Lidell to turn it into inmate appeals for proper filing.  (ECF No. 1 at 2, 9.)  Defendant Liddell gave the grievance to defendant Cross, who came to plaintiff's cell around 1:30 p.m. accompanied by defendants Anderson and Liddell. Defendant Cross accused plaintiff of being a negative human being, and stated plaintiff was a little punk bitch, with no "fucken backbone."  (ECF No. 1 at 9.)  Plaintiff replied, "You're very unprofessional, unlady like."  (Id.)  Defendant Cross then verbally threatened plaintiff's safety by stating, "you come back out of that cell again, and I'll do more than take away your fucken typewriter."  (Id.)  Plaintiff attempted to de-escalate the situation by apologizing, but defendant Cross produced plaintiff's 602 appeal complaint form and ripped the grievance form up into small pieces, "directly in plaintiff's face and in front of plaintiff's peers," then telling plaintiff to

"consider his complaint filed and his issues to be addressed, and corrected."  (ECF No. 1 at 2, 6, 10.)  This is the second time in two weeks that defendant Cross ripped up plaintiff's 602 grievance form.  (ECF No. 1 at 12.)  Plaintiff contends such act rendered his administrative remedies unavailable.

With his opposition, plaintiff provides his own declaration reiterating his claim that instead of submitting the appeal form to the appeals box, Liddell gave plaintiff's grievance form to defendant Cross.  At about 1:30 p.m., defendants Cross, Anderson and Liddell approached plaintiff's cell.  Defendant Cross was holding plaintiff's 602 grievance that plaintiff had asked Liddell to place in the appeals box.  Defendant Cross, "highly agitated," told plaintiff "you come back out of that cell again, and I'll do more than take away your fucken typewriter."  (ECF No. 46 at 19.)  Cross then produced plaintiff's 602 grievance and "ripped the complaint form into small pieces," and then stated "consider this filed.  I addressed, and corrected your problem all in one visit."  (Id.)  Further, plaintiff states that defendant Cross' verbal threat "effectively intimidated" plaintiff not to exit his cell until he was later transferred safely to CSP-Corcoran. (ECF No. 46 at 20.)

In support, plaintiff provided two inmate declarations:

1.  In addition to witnessing events prior to and during the confiscation of plaintiff's typewriter, inmate Moises Vega, AX-5503 declared that Vega (a) heard plaintiff speaking to Liddell; (b) heard plaintiff explain to Liddell that plaintiff had a request form for Liddell to sign and plaintiff needed a cell search receipt; (c) saw Liddell sign plaintiff's request form, and then saw Liddell walk away; (d) saw Liddell return 15-20 minutes later, hand plaintiff some papers, then saw plaintiff hand Liddell a 602 appeal form; (e) heard plaintiff state, "turn this in to the inmate appeals office;" (f) saw defendants Anderson, Liddell and Cross return to the front of plaintiff's cell later that day; Cross was yelling at plaintiff, calling him names, and stated: "Howell, you're a little punk bitch.  You don't got a fucken backbone;" (g) heard Cross tell plaintiff that if he came back out of his cell again, she'll do more than take away his typewriter; (h) saw Cross with the 602 green appeal form in her right hand; (i) saw Cross ripping the complaint form up; (j) heard Cross telling plaintiff consider the appeal filed, and that she

addressed and corrected his problems all in one visit.  (ECF No. 46 at 26.)

2.  Inmate Mark A. Hunt, F-60076, declared that he (a) saw Cross go to plaintiff's cell, "they was yelling;" (b) heard Cross say:  "Howell you're a little bitch, you don't got no fucken backbone," and "consider your appeal filed an addressed;" (c) heard paper being ripped-up; and (d) heard Cross tell plaintiff that if he come out of his cell again she will do more than take his typewriter away.  (ECF No. 46 at 28.)

Plaintiff also provided a copy of his CDCR 22 Request for Interview form dated March 29, 2019.  Plaintiff complained that Liddell took plaintiff's typewriter without leaving a cell search notice or receipt, and that the CDCR 22 would serve as plaintiff's receipt.  (ECF No. 46 at 23.)  Plaintiff wrote that he was giving Liddell plaintiff's 602 complaint form to be submitted, but wanted it noted that Capt. R. Cross ripped up plaintiff's last complaint form, so signed this CDCR 22 form to document plaintiff was giving Liddell plaintiff's complaint form.  The CDCR 22 form is signed by Liddell on March 29, 2019.  (ECF No. 46 at 23.)  The staff response section is blank, but on March 30, 2019, plaintiff completed Section C:  Request for Supervisor Review, writing:  "I am requesting to speak directly to the warden.  Capt. R. Cross just threat[ened] me and she ripped up my 602 complaint form for the 2nd time denying me access to the appeal system and to file a complaint on her. . . ."  (ECF No. 46 at 23.)

V.  <u>Evidentiary Hearing</u>

A.  <u>Plaintiff's Witnesses</u>

Initially, despite being notified of the evidentiary hearing, and informed of his ability to make arrangements to attend the hearing by Zoom, inmate Hunt did not appear.  Therefore, the court does not consider inmate Hunt's declaration.

Inmate witness Vega appeared and testified as follows.  Vega could not recall in which cell he was housed but did recall he was housed next door to plaintiff during the alleged incident.  When probed as to how he could recall this particular incident when he has witnessed daily cell searches for the last four plus years, Vega testified that he tends to recall such searches when imposed on his neighbors or cellmates.  He could not identify a reason why he remembered an incident where defendant Liddell searched plaintiff's cell and took out a typewriter.  Vega

8

testified that he heard plaintiff having a heated argument with Captain Cross, but could not recall what was said, and saw them rip up something.

On cross-examination, Vega confirmed that he wrote his entire declaration a few days after the incident and signed it at plaintiff's request.  Vega testified he remembered the March 29, 2019 incident, but not what he wrote in the declaration.  After the typewriter was removed from plaintiff's cell, Sergeant Anderson told plaintiff he wasn't going to get the typewriter back, but Vega could not recall anything else Anderson said or whether Anderson came to plaintiff's cell before the cell search took place.  Vega conceded that his cellmate was loudly playing his TV, and Vega likely missed part of the conversation.  Vega reiterated that he drafted his declaration, and admitted the declaration is in his own handwriting.

Further, Vega testified that the piece of paper torn up was green, which is why Vega believed it was a 602, and defendants Cross, Anderson and Liddell were present at that time. Plaintiff was taken out of his cell that day, but after the incident plaintiff stayed in his cell more often because he didn't want to come out and risk them taking more stuff from his cell.  Vega admitted he talked to plaintiff about the incident and about making a declaration.  Plaintiff told Vega plaintiff was going to file another 602, and that plaintiff was going to take them to court. Vega was transferred to CCCMS the same week as this incident.[2]

The court requested that Vega read the last paragraph of his declaration which states Vega "thoroughly reviewed" the declaration's statements, but it "was written out for" Vega by plaintiff. (ECF No. 46 at 26.)  The court asked Vega to reconcile his testimony that he wrote the declaration with the language of the declaration stating that plaintiff wrote it, as well as plaintiff's own testimony that plaintiff wrote the declaration for Vega, but Vega was not able to, testifying "I don't know why it says that because I did write it."

On further direct exam, Vega confirmed he did not graduate from high school and was currently taking Strattera, Benadryl, Seroquel, and the forced medication PDS, which interferes

---

[2]  CDCR's Mental Health Services Delivery System Program Guide provides four levels of mental health care services:  Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care. Coleman v. Brown, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

with his memory and ability to read or write.  At the time of this incident, Vega was on different medications.  Vega confirmed plaintiff assisted him in writing the declaration, that plaintiff helped Vega by assisting in spelling and writing letters to his family, and that is how Vega could document what happened in his declaration.  The court again asked Vega whether the declaration was in his handwriting; and Vega responded "Yes, but he typed it up."  The court responded, "This is a handwritten document, right?" and Vega replied, "Yes, this is my handwriting."

The undersigned finds inmate Vega's testimony not credible.  Despite pointing out that the declaration expressly states that plaintiff wrote the declaration on behalf of Vega, inmate Vega persisted in testifying that Vega personally wrote the declaration.  Comparing the handwriting on the declaration with plaintiff's other pro se filings, it is clear that plaintiff handwrote the declaration for Vega.  In addition, inmate Vega's credibility was impeached by his testimony that he was on psychotropic medications at the evidentiary hearing, which he conceded interfered with his memory.  Such memory deficits were noticeable throughout Vega's testimony.  Therefore, the undersigned does not consider Vega's declaration or testimony.

B. Plaintiff's Form 22

At the hearing, plaintiff argued that the Form 22 was simply a receipt for plaintiff to have proof that he submitted his 602 appeal to defendant Liddell.  However, both defendant Liddell and defendant Anderson testified that they did not sign the form and, in fact, had never seen the form prior to the hearing.  Both denied the signatures on the Form 22 were theirs.  Plaintiff attempted to rebut such testimony by showing that the signatures on the Form 22 were similar to signatures on other prison documents.  But the undersigned was not persuaded.

Aside from the testimony of defendants Liddell and Anderson which the undersigned found credible, the form included anomalies also calling into question its validity.  For example, under the signature block allegedly bearing Liddell's printed name, the form has a block to indicate to whom the Form 22 would be forwarded to:  "C/O M. Liddle A.S.U. floor officer," and dated March 29, 2019.  (ECF No. 46 at 23.)  It does not make sense that defendant Liddell would forward the form to himself.  But, in addition, if defendant Liddell had signed the form and indicated he was forwarding it to himself, he certainly would not have misspelled his own name

10

"Liddle." But even setting aside such anomalies, plaintiff provided no motive for why defendants would deny signing such form. Because the Form 22 only served as a receipt, there is no motive for defendants to lie about signing the Form 22.

On the other hand, although plaintiff argued the Form 22 was only a receipt, he provided the Form 22 to bolster his claims that defendant Cross tore up plaintiff's 602 appeal. Therefore, it appears plaintiff had a motive to fabricate the Form 22.

In light of the credible testimony of defendants Liddell and Anderson that they did not sign or even recognize the Form 22, the undersigned considers the Form 22 only insofar as it calls plaintiff's entire credibility into question.

V. Discussion re Exhaustion

It is undisputed that plaintiff did not submit a grievance that was accepted at the first level of review. There is no record of a grievance pertaining to the instant retaliation claims having been accepted at the first level of review.

The undersigned finds credible the testimony of defendants Liddell, Anderson, and Cross that defendant Cross did not tear up a 602 appeal in front of plaintiff's cell on March 29, 2019. Both defendant Liddell and defendant Anderson testified that they did not hear defendant Cross utter the statements and threats testified to by plaintiff, and defendant Cross denied making such statements or threats. Indeed, defendant Cross testified that the only visit she made to plaintiff's cell was for an interview concerning his hunger strike.

In light of such credible testimony, the court cannot find that administrative remedies were unavailable to plaintiff. This action must be dismissed based on plaintiff's failure to exhaust his administrative remedies prior to bringing this action.

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment (ECF No. 40) is reinstated; and

Further, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 40) be granted; and

2. This action be dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies prior to filing this action.

11

1        These findings and recommendations are submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6   objections shall be filed and served within fourteen days after service of the objections.  The

7   parties are advised that failure to file objections within the specified time may waive the right to

8   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9   Dated:  February 7, 2022

10

11

/howe0578.msj.fte

12

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28